UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAWN CROWLEY                                    CIVIL ACTION

VERSUS                                           No. 17-8189

LMS INTELLIBOUND, LLC                            SECTION: "J"(2)

## ORDER AND REASONS

Before the Court is a *Motion for Default Judgment* **(Rec. Doc. 9)**, filed by Plaintiff, Shawn Crowley, in which Plaintiff seeks a default judgment against Defendant, LMS Intellibound, LLC (d/b/a Capstone Logistics, LLC) ("LMS (d/b/a Capstone)"). The Court held an evidentiary hearing on Friday, February 16, 2018, after which the Court took the matter under advisement. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

On or about June 18, 2017, Plaintiff, a vacuum operator employed by Associated Wholesale Grocers, Inc. ("AWG"), was working at AWG's warehouse when a forklift struck him, knocked him to the ground, and ran over his left leg. The operator of the forklift was an employee of LMS (d/b/a Capstone), a subcontractor tasked with unloading trucks at the warehouse. As a result of the incident, Plaintiff suffered severe injuries to his left leg, including a large laceration from his heel up to the back of his

knee.  Plaintiff continues to suffer from various medical issues as a result of this incident.

On August 24, 2017, Plaintiff filed a complaint in this Court, wherein Plaintiff alleges that LMS (d/b/a Capstone) is vicariously liable for the negligence of the forklift operator that caused his injuries. (Rec. Doc. 1.)  LMS (d/b/a Capstone) was served by private process server through its agent of service of process on September 8, 2017. (Rec. Doc. 21.) The time to file responsive pleadings has since long expired.  To date, LMS (d/b/a Capstone) has failed to request an extension, plead, or otherwise defend the action against it.  Upon Plaintiff's motion, the Clerk of Court entered an entry of default against LMS (d/b/a Capstone) on January 5, 2018. (Rec. Doc. 8.)  On January 8, 2018, Plaintiff filed a Motion for Default Judgment. (Rec. Doc. 9.) The Court held an evidentiary hearing on Friday, February 16, 2018, after which the Court took the matter under advisement.  The motion is now before the Court.

## **LEGAL STANDARD**

The United States Court of Appeals for the Fifth Circuit has adopted a three step process to obtain a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a).  Next, an entry of default must be entered by the clerk when the default

2

is shown "by affidavit or otherwise." *See id.*; *NewYork Life*, 84 F.3d at 141. Third, a party may apply to the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life*, 84 F.3d at 141.

After a party files for a default judgment, courts must apply a two-part process to determine whether a default judgment should be entered. First, a court must consider whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default have been clearly established, (4) whether the default was caused by excusable neglect or good faith mistake, (5) the harshness of the default judgment, and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* at *2. Second, the Court must assess the merits of the plaintiff's claims and determine whether the plaintiff has a claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016). By defaulting, a defendant admits to the plaintiff's well-pleaded allegations of fact, at least with respect to liability. *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (citing *Nishimatsu Constr. Co.*,

3

*Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Even though the facts are admitted, the plaintiff still has the burden of showing that they give rise to a viable cause of action. *See Nishimatsu Constr.*, 515 F.2d at 1206.

## DISCUSSION

### A. Venue and Subject Matter Jurisdiction

First, the Court must establish that venue and subject matter jurisdiction have been properly asserted in this case. The incident at issue occurred in St. Tammany Parish, which is within the bounds of this district. Therefore, venue is proper. Plaintiff invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity between the parties. Plaintiff is a Louisiana resident. With regard to LMS (d/b/a Capstone), the Court is satisfied based on the evidence submitted that it is more probable than not that the LMS and Capstone LLCs do not contain any members who are domiciled or residents in Louisiana.[1] Therefore, the Court finds that diversity jurisdiction has also been properly established.

### B. Default Judgment is Appropriate under the *Lindsey* Factors

Considering the *Lindsey* factors, the Court finds that the entry of default judgment is appropriate under the circumstances.

---

[1] *See* testimony of Michelle Gallagher.

First, there are no material facts in dispute because Defendant failed to file an answer or Rule 12 motion.  Second, Defendant has failed to respond to Plaintiff's correspondence.[2]  Third, the grounds for granting a default judgment against Defendant are clearly established, as evidenced by the procedural history and the Clerk's entry of default.  Fourth, the Court has no basis to find that Defendant's failure to respond was the result of a good faith mistake or excusable neglect because Defendant has failed to respond to Plaintiff or the Court.  Fifth, Defendant's failure to file any responsive pleading or motion mitigates the harshness of a default judgment.  Finally, the Court is not aware of any facts that would lead it to set aside the default judgment if challenged by the Defendant.  The Court therefore finds that the six *Lindsey* factors weigh in favor of default.

C. **<u>Plaintiff's Viable Claim</u>**

Considering the merits of Plaintiff's claim, the Court finds that Plaintiff has demonstrated that he is entitled to relief against LMS (d/b/a Capstone) in the form of default judgment.  In negligence cases, Louisiana courts have adopted a duty-risk analysis to determine whether liability exists under the facts of

---

[2] Plaintiff's counsel sent LMS a letter informing it of the pending litigation. (Exhibit 18.) Cynthia Ferrer, HR coordinator for Capstone Logistics, responded by email on October 30, 2017, acknowledging the lawsuit and requesting the relevant documents. *See* Exhibit 19.  Counsel for Plaintiff provided such documents by email on November 1, 2017.  *See* Exhibit 20.  However, there was no further communication from Capstone or LMS thereafter.

5

a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Brewer v. J.B. Hunt Transport, Inc.*, 09-1408 (La.3/16/10), 35 So.3d 230, 240; *see also Bourg v. Cajun Cutters, Inc.*, 2014-0210 (La. App. 1 Cir. 5/7/15), 174 So. 3d 56, 62. Vicarious liability is embodied in Louisiana Civil Code article 2320 which provides that employers are answerable for the damage occasioned by their employees while acting the course and scope of their employment. La. Civ. Code 2320.

Plaintiff has satisfied the elements for a negligence claim against LMS (d/b/a Capstone) under the theory of vicarious liability. The evidence adduced at the hearing on the instant matter clearly established that the operator of the forklift, LMS's employee, was negligent in operating the forklift in the course and scope of his employment and that such negligence caused the Plaintiff's injuries.[3]

---

[3] Plaintiff testified that at the time of the incident, the LMS forklift operator was not paying attention and driving in a position such that the operator could not see where he was going when he ran over Plaintiff's leg. Plaintiff also testified that he knew of previous complaints concerning this forklift operator's careless driving.

6

With respect to damages, in addition to Plaintiff's live testimony, Plaintiff submitted evidence of his medical records and invoices,[4] the Workers' Compensation lien for the medical expenses it has covered,[5] photographs of his injuries,[6] and various financial and employment records.[7] After the incident, Plaintiff spent four to five days in the emergency room. When he was released home, his injured leg had no weight bearing capacity for four months and Plaintiff faced the risk of losing the leg entirely. His treatments for the first few months included multiple debridement procedures, the surgical reattachment of his big toenail, and visits to a plastic surgeon to address the large areas of missing skin.

Plaintiff is currently in the care of an orthopedist, a podiatrist, a physical therapist, and an occupational therapist for his injuries. Evidence revealed that Plaintiff has bilateral lymphedema as a result of his June 18, 2017 accident and that the standard treatment will be an additional 16 to 20 visit of complete decongestive therapy (CDT) to reduce the lymphedema, additional therapy for life as needed, and that he will be required to wear custom compression garments for the rest of his life. Since the date of the incident, Plaintiff has gained approximately 120 pounds

---

[4] Exhibits 7-14.
[5] Exhibit 5.
[6] Exhibit 6.
[7] Exhibits 1-2.

due to the four or five months he spent without mobility. Plaintiff's big toe has developed a disfigurement of sorts, in that it sticks straight up in the air and does not lay flat. Plaintiff purchased a hospital bed as necessary to keep his foot elevated in the air and to prevent swelling.[8] Plaintiff was also required to purchase specialized shoes to stabilize his ankle.[9]

Jordan Frankel, an expert in rehabilitation counseling and a certified life care planner, testified at the hearing that it is unlikely that Plaintiff will ever be able to return to a medium to heavy duty job. Plaintiff likewise stated that he cannot perform any of the jobs that he has occupied in the past, but that he is determined to be able to work a lighter duty job in the future. Plaintiff's primary concern is to regain his mobility so that he may begin to lose the dangerous amount of weight he has gained "before it kills [him]." As of the date of the hearing, Plaintiff has his doctors' approval to begin low impact exercises to gradually achieve that goal.

Plaintiff also presented the testimony of Shael Wolfson, an expert economist, who was asked to estimate Plaintiff's various damages, including lost earnings, earning capacity, and future medicals of Plaintiff.[10] Wolfson provided the following estimates: $30,001.00 for past lost earnings from date of incident to the

---

[8] Exhibit 3.
[9] Exhibit 4.
[10] *See* Exhibit 22, Wolfson Report.

date of the hearing; $12,988.00 for fringe benefits lost; and $260,855.00 for future loss of wages assuming that Plaintiff was able to go back to some lighter work a year from the date of the hearing.

Plaintiff contends that due to his injuries, he is also entitled to general damages of $450,000.00. (Rec. Doc. 11 at 2.) Considering the extent and severity of Plaintiff's injuries, his subsequent hospitalization, extensive treatment, the development of bilateral lymphedema, his residual foot and leg disfigurement, his sensory loss, deviated gate, impaired mobility, and significant weight gain,[11] the Court concludes that $450,000.00 is an appropriate amount for Plaintiff's pain, suffering, and disability based on the foregoing testimony and evidence presented. Accordingly, Plaintiff's total damages are as follows:

| | |
|---|---|
| Past Lost Earnings: | $30,001.00 |
| Fringe Benefits Lost: | $12,988.00 |
| Future Medical Costs: | $35,235.00 |
| Future Loss of Wages: | $260,855.00 |
| Total Medical Bills/Invoices: | $142,396.95 |
| Hospital Bed: | $599.99 |
| Custom Shoes: | $69.38 |

---

[11] See Exhibit 15.

| General Damages: | $450,000.00 |
|---|---|
| ***Total:*** | ***$932,145.32*** |

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Default Judgment* **(Rec. Doc. 9)** filed by Plaintiff is **GRANTED**. The Court will enter final judgment against LMS (d/b/a Capstone) in the amount of $932,145.32, together with costs and legal interest from the date of judicial demand until paid.

New Orleans, Louisiana this 25th day of April, 2018.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE